THE ALBANY BREWING COMPANY *vs.* THE TOWN OF MERIDEN.

The statute (Gen. Statutes, tit. 12, ch. 2, secs. 15, 16,) provides that real estate shall stand charged with the owner's taxes in preference to any other lien, and may be sold for the same within one year notwithstanding any transfer or levy of attachment or execution; and that the selectmen may continue any such tax lien for not more than ten years after the tax becomes payable, by recording in the land records of the town their certificate describ-

ing the real estate, and stating the amount of the tax and the time it became due. Held—

1.   That this statute authorizes the imposition upon one piece of land of a lien for the taxes of the owner upon all his property real and personal.

2.   That this lien takes precedence of all pre-existing mortgages and liens.

3.   That it does not affect the case that the owner had other property which might have been taken on a tax-warrant.

Where a tax-payer puts several pieces of land into his assessment list as one, with a valuation of them as a whole, and the assessors accept the list and make their valuation of them as a whole, it is not for the tax-payer or any grantee of his to complain, after all opportunity for a separate assessment of the pieces has passed.

BILL IN EQUITY, to set aside or postpone two tax liens; brought to the Court of Common Pleas for New Haven County. Facts found and case reserved for advice. The case is fully stated in the opinion.

*R. Hicks*, for the petitioners, contended that the tax liens were invalid because they included taxes on other property; (Gen. Statutes, p. 153, sec. 2, and p. 155, sec. 13; Acts of 1866, p. 712; Cooley on Taxation, 342; Hilliard on Taxation, 464; Burroughs on Taxation, 211; *Hayden* v. *Foster*, 13 Pick., 492, 497; *Wallingford* v. *Fiske*, 24 Maine, 390; *Andrews* v. *Senter*, 32 id., 394; *Woodburn* v. *Wireman*, 27 Penn. St., 18; *McQuesten* v. *Swope*, 12 Kan., 34; *Hubbard* v. *Brainard*, 35 Conn., 563; *First Eccl. So.* v. *Hartford*, 38 id., 274.) That the taxes on other property could not be collected out of this real estate, to the injury of other parties interested, when other property could have been found to levy upon; (Gen. Statutes, p. 163, secs. 13, 15; Cooley on Taxation, 305, 307; Burroughs on Taxation, 272; *Hutchins* v. *Moody*, 30 Verm., 655; *Coe* v. *Wickham*, 33 Conn., 393; *Briggs* v. *Morse*, 42 id., 258.) That a mortgage takes precedence of a tax lien of a later date; (Blackwell on Tax Titles, 547, 550; Burroughs on Taxation, 275; *Brown* v. *Austin*, 41 Verm., 262, 270; *Gormley's Appeal*, 27 Penn. St., 49, 51.) And that a grantee is not estopped by accepting a deed which describes the premises as subject to an incumbrance, from showing that the incumbrance does not legally exist; (*Goodman* v. *Randall*, 44 Conn., 321.)

*J. P. Platt,* for the respondents.

PARDEE, J. This is a bill in equity; in it the petitioners ask the Court of Common Pleas for New Haven County either to declare that certain tax liens recorded by the town of Meriden against a piece of land therein belonging to them are illegal and void, or, if legal, that they are to be postponed to their mortgage title.

In June, 1874, John Brady and Hugh Grogan, then owning the lot, mortgaged it to Moriarty and Abell of New Haven; in September, 1876, Brady conveyed his interest to Grogan; in March, 1877, the latter conveyed it to his assignee in bankruptcy, who sold it at public auction on July 27, 1877, to C. C. Herbert, who purchased it as agent for the petitioners; the latter subsequently bought the mortgage.

At the public sale the assignee gave notice in hearing of Herbert, that the taxes hereinafter mentioned were an incumbrance upon the property, and he accepted a deed in which they were specified as such.

During the years 1874-5-6, Brady and Grogan were the joint owners of this and four separate pieces of land in the town of Meriden, also of personal property valued at about $1,000. In each of those years they made and delivered to the assessors a list of their property for purposes of taxation, in each of which they made one item of their separate pieces of land and named one sum as the value of all. If the tax-payer chooses to list and value separate pieces of land as one, and thus invite an assessment thereon as one, and the assessors accept the list and accede to the request, it is not for him nor for any grantee of his to complain after all opportunity for separate assessment has passed.

Up to the time of his bankruptcy Grogan was in possession of personal property sufficient to pay these taxes; during a portion of the time prior to October, 1877, and during all of the time since, Brady has been in possession of personal property sufficient to pay them. The collector demanded payment from each, but having no knowledge of the possession of personal property by either, no steps were taken to

enforce or secure payment other than the filing of notice of a lien.

The tax upon the list of 1874 became payable on April 20th, 1875; the tax upon the list of 1875 on April 21st 1876. Upon April 19th, 1876, the selectmen of Meriden recorded a lien against the lot for the first, and upon April 20th, 1877, another for the last of these taxes. These were assessed upon all of the estate, real and personal, of Brady and Grogan. The liens were filed under the statute (Gen. Statutes, p. 163, secs. 15 and 16,) which provides that " real estate, owned by any person in fee or for life or for a term of years, by gift or devise and not by contract, shall stand charged with his lawful taxes in preference to any other lien, and may be sold for the same and costs of collection within one year after the taxes become due, notwithstanding any transfer thereof, or any levy of attachment or execution thereon; and shall after the expiration of such year, and before any such transfer or levy, remain liable for the payment of such taxes and costs until paid; but no real estate so transferred or levied upon shall be sold for the payment of any taxes laid upon a list made after such transfer or levy, nor shall any real estate, legally transferred, attached or taken by execution, be sold for taxes when other estate can be found sufficient to pay them and the legal costs." * * " The selectmen of any town may continue any tax lien upon any real estate therein for not more than ten years after the tax becomes payable, by recording in the land records of the town within the first year of said period their certificate, describing the real estate, the amount of the tax and the time when it became due; and thereupon such tax shall remain a lien upon such land at interest at seven per cent. a year, and said land may at any time during said period be sold for said tax in the same manner as if sold within said first year."

This statute authorized the imposition upon one piece of land of a lien for all taxes legally assessed against the owner thereof, not only upon that but upon any other land or property belonging to him.

For the period of one year from the several dates when they became payable, the taxes took precedence of every other lien upon the real estate of Brady and Grogan, and the same might have been taken therefor without regard to the transfer thereof or the levy of an execution thereon; within that period and while that lien was in full force the selectmen legally gave to it the statutory extension of ten years, thus preserving to it during that period the priority which it enjoyed during the first year of its existence. This lien with its extension is a statutory creation; it stands quite apart from the matter of selling land upon a tax-warrant, and is not encumbered by any proviso as to the possession of other property. It is a concession to the taxpayer. The State waives its right to immediate payment by a forced sale, and accepts a first mortgage for ten years. All that the statute has made necessary to its validity is a legal assessment and a proper and timely record of the lien.

This lien takes precedence of all others; mortgagees take their security with knowledge that the sovereignty must and will take by taxation all that is necessary to the preservation of its own life; the life of the State is of higher concern than the protection of a debt due to an individual member of it. Therefore every piece of real estate must contribute its fair proportion to the public treasury if the authorities move within a specified time and according to statutory methods; and this regardless of mortgagees or purchasers.

We advise the Court of Common Pleas to dismiss the petition.

In this opinion the other judges concurred.